# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | § § | |
| *Plaintiff*, | § | Civil Action No. 4:19-cv-676 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| RKM UTILITY SERVICES, INC., SHI | § | |
| MACHINERY, LLC and RYAN DOWDY | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Injunctive Relief and Brief in Support

(Dkt. #12).  After consideration, the Court is of the opinion that the motion should be **GRANTED**

**in part**.[1]

## BACKGROUND

### I.      Factual Summary

This case involves a construction bond dispute.  Defendant RKM Utility Services, Inc.

("RKM") is a construction company that supplies labor, equipment, and materials to construction

job sites (Dkt. #28-1, ¶ 3).  Defendant SHI Machinery, LLC ("SHI") owns some of the equipment

that RKM leases for its construction projects.  *Id.*  Defendant Ryan Dowdy is the President of

RKM.  *Id.*

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") acted as payment and

performance surety for some of RKM's construction projects under contract with the City of

---

[1] PIIC originally sought an injunction ordering Defendants to pay $803,545.24 in collateral security, which represented the amount in payment bond claims PIIC was aware of at the time (Dkt. #12).  But PIIC amended its request in the March 25, 2020 supplement to its motion for injunctive relief (Dkts. #27-1; #27-5).  As the following Order will discuss, the Court grants the injunction for the *amended* amount of collateral sought—$496,574.97 (Dkt. #27-5).

Dallas.  In connection with some of those projects, PIIC executed a General Indemnity Agreement with RKM and Mr. Dowdy on May 4, 2012 (Dkt. #12-1).  And on April 19, 2016, SHI executed the Amendment to the General Indemnity Agreement (together with the General Indemnity Agreement, "the Agreement") where it agreed to be an additional indemnitor.  *Id.*  In exchange for PIIC's agreement to bond those projects, Defendants agreed to:

> [I]ndemnify and hold harmless [PIIC] from and against any Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement.

(Dkt. #12-1).  Defendants also agreed to post collateral upon demand by PIIC:

> Indemnitors agree to deposit immediately upon demand by Surety an amount equal to the greater of: (a) the amount of any reserve established by Surety in its sole discretion to cover any actual or potential liability for any Loss or potential Loss for which Indemnitors would be obliged to indemnify Surety hereunder; or (b) the amount of any Loss or potential Loss (including legal, professional, consulting, and expert fees and expenses) in relation to any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond, as determined by the Surety in its sole discretion. . . . The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Loss or potential Loss or assert any defenses to the validity or enforcement of this Agreement. . . . In the event that the Indemnitors fail to deposit the amount of cash collateral required under this provision, Surety may, in its sole discretion, direct the Indemnitors to deposit alternate forms of collateral security acceptable to Surety.

*Id.*

At some point during RKM's work on the City of Dallas projects, PIIC began receiving claims on the bonds.  On August 14, 2019, PIIC sent a written demand to Defendants informing them of payment bond claims in the amount of $803,545.24 and demanding a deposit with PIIC in that amount within ten (10) days from the date of the letter (Dkt. #12-2).

Since commencing this suit, PIIC has received some payments on the bonds, which have been credited against the amounts initially sought from Defendants. *See* (Dkt. #27-1). As of March 25, 2020, PIIC estimated a projected loss of $496,574.97[2] in relation to claims made on the bonds (Dkts. #27-1; #27-5).

To date, Defendants have not deposited any collateral with PIIC.

## II.     Procedural History

On October 28, 2019, Plaintiff filed a motion for injunctive relief (Dkt. #12). On November 26, 2019, Defendants filed a response (Dkt. #16).

On December 11, 2019, by agreement of Plaintiff and Defendants, the Court granted in part Plaintiff's motion for injunctive relief (Dkt. #20). Specifically, the Court ordered that "Defendants shall specifically perform their books and records obligations under the Indemnity Agreement and allow [Plaintiff] access to the books, records, and accounts of [RKM] and [SHI] at a mutually agreeable time on or before February 6, 2020" (Dkt. #20). The Court took Plaintiff's remaining requested relief under advisement and ordered the parties to file a Joint Advisory updating the Court as to the status of the books and records review by March 5, 2020 (Dkt. #20).

On March 5, 2020, the parties filed a Joint Advisory updating the Court as to the status of the books and records review and informing the Court that Plaintiff wished to proceed with its motion for injunctive relief (Dkt. #25). On March 6, 2020, the Court issued an Order setting the motion for a hearing on March 20, 2020 (Dkt. #26). On March 18, 2020, the Court held a status conference to address the upcoming hearing on Plaintiff's motion for injunctive relief and cancelled the same, as the parties agreed to supplement their briefing and proceed on the briefing alone.

---

[2] This amount includes two pending lawsuits relating to bonds issued on behalf of Defendants. *See* (Dkt. #25).

On March 25, 2020, Plaintiff filed a supplement to its motion for injunctive relief (Dkt. #27).  On March 27, 2020, Defendants filed a supplement to their response in opposition to Plaintiff's motion for injunctive relief (Dkt. #28).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.*  Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)).  The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

PIIC seeks a preliminary injunction that will (1) order the Indemnitors "to specifically perform their obligation to deposit cash collateral with PIIC in the amount of $496,574.97"; (2) order the Indemnitors "to specifically perform their books and records obligations under the [] Agreement"; and (3) enjoin Indemnitors "from transferring, encumbering or otherwise dissipating any of their assets until such time as they have posted the full amount of the collateral demanded by PIIC" (Dkt. #27-5).

I.       **Likelihood of Success on the Merits**

A plaintiff seeking a preliminary injunction must present a prima facie case of his substantial likelihood to succeed on the merits. *See Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)). This does not require the plaintiff to establish his entitlement to summary judgment. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

When interpreting contracts, courts are to "ascertain and [] give effect to the intentions of the parties as expressed in the instrument." *Hartford Fire Ins. Co. v. 4-H Ventures, Inc.*, No. CV H-07-4355, 2008 WL 11389579, at \*3 (S.D. Tex. June 25, 2008) (quoting *R & P Enters. v. La Guarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980)).

The collateral security provision (Dkt. #12-1, ¶ 4) in the Agreement is unambiguous. It requires that Defendants post collateral security *immediately upon demand* by PIIC. *Id.* And Defendants do not dispute that the plain language of the provision is unambiguous. They contend merely that the amount requested does not represent PIIC's potential exposure and, even if it did, they do not have sufficient cash to deposit the amount requested.

Considering the plain language of the Agreement, it is clear that Defendants had and have a contractual obligation to post collateral security upon demand by PIIC—an obligation that is not affected by the amount requested by PIIC or Defendants' cash on hand at the time. The bottom line is that collateral security on demand is what PIIC bargained for in exchange for issuing $600 million in bonds, and PIIC's demand triggered Defendants' obligation to post that security. Because Defendants did not do so, PIIC is likely to succeed on the merits.

## II.     Irreparable Harm

Plaintiffs must demonstrate they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages."  *Janvey*, 647 F.3d at 600. However, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'"  *Id.*  An injunction is appropriate only if the anticipated injury is imminent and not speculative.  *Winter*, 555 U.S. at 22.

In determining whether there is a substantial threat that PIIC will suffer irreparable harm absent an injunction, it is important to first identify what the potential harm is.  Defendants assert that the harm PIIC is seeking the injunction to prevent is strictly monetary, arguing that PIIC's claim is fundamentally one for payment of money on a contract—the Agreement—rather than for purely equitable relief.  If it were, Defendants would be correct in claiming that PIIC's motion should be denied because its requested relief "may be adequately remedied by a judgment on the merits" (Dkt. #16, ¶ 15).  Indeed, typically "contractual rights are not enforced by writs of injunction because irreparable harm is rarely shown when a suit for damages for breach of contract is available."  *4-H Ventures*, 2008 WL 11389579, at *4 (citing *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ)).

But that is not the case here.  PIIC's claim is not merely a claim for damages on a contract. Rather, it is better understood as a request for specific performance to enforce its collateral security rights.  The Agreement was not merely a standard bargained-for-exchange of payment for goods or services.  It was a specialized bargain for *security on demand*.  A monetary judgment after the fact will not adequately protect PIIC's bargain; without enforcing PIIC's collateral security rights, PIIC would lose entirely the very benefit for which it entered the Agreement in the first place.  *See*

6

*4-H Ventures*, 2008 WL 11389579, at *4; *see also Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992-M, 2017 WL 3209522, at *4 (N.D. Tex. May 18, 2017) (citing *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984); *Liberty Mut. Ins. Co. v. Nat'l Pers. of Texas, Inc.*, No. CIV.A. 3:02-CV-1341, 2004 WL 583531, at *2 (N.D. Tex. Mar. 24, 2004)) ("Courts generally grant specific performance to enforce collateral security clauses on the grounds that if a creditor is to have the security position he bargained for, the promise to maintain that security must be specifically enforced."). Accordingly, the Court concludes that declining to issue the injunction would result in irreparable harm to PIIC.

### III.    Balance of Hardships

When deciding whether a preliminary injunction should issue, "courts must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). As a result, courts must balance the hardship a defendant would face against the irreparable harm a plaintiff would face if a preliminary injunction does not issue, namely, the inability to obtain meaningful relief from this Court. *Id.*

As stated above, PIIC faces irreparable harm in the absence of a preliminary injunction here because it would forever lose the benefit for which it bargained by issuing the bonds and entering the Agreement. *See 4-H Ventures*, 2008 WL 11389579, at *4. This harm outweighs the harm facing Defendants in having to deposit the collateral security demanded by PIIC, which they expressly agreed to do in the Agreement. *Id.* That is, "[Defendants] are not unfairly prejudiced by being held to the agreement to indemnify [PIIC] to which they were signatories." *See 3i Constr., LLC*, 2017 WL 3209522, at *4. Moreover, under the Agreement, PIIC agreed to refund any unused portion of the collateral deposit upon termination of all liability of PIIC on the bonds,

thus mitigating the potential hardship faced by Defendants.  *See* (Dkt. #12-1, ¶ 4); *see also 3i Constr., LLC*, 2017 WL 3209522, at \*4.

Accordingly, the Court concludes that the irreparable harm facing PIIC in not issuing the preliminary injunction outweighs any potential harm facing Defendants if the preliminary injunction is granted.

## IV.     Public Interest

Finally, for a preliminary injunction to issue, the injunction must not disserve the public. The Court sees no reason why an injunction would disserve the public here.  The issuance of a preliminary injunction in circumstances such as these serves the public interest by ensuring parties to indemnity agreements that they can count on enforcement of the terms that they bargained for. *See 3i Constr., LLC*, 2017 WL 3209522, at \*4 (quoting *Int'l Fidelity Ind. Co. v. Anchor Envt'l, Inc.*, 07-04750, 2008 WL 1931004, at \*7 (E.D. Penn. May 1, 2008)) ("[T]he issuance of a preliminary injunction furthers the public interest by recognizing and enforcing the plain language of a binding surety indemnification agreement.").  Indeed, indemnity agreements are a central part of bonded construction projects, and it serves the public interest for sureties to know that Courts will protect and enforce their contractual rights under those agreements.

Because PIIC has satisfied all four prongs of the preliminary injunction analysis, the Court concludes that PIIC is entitled to a preliminary injunction enforcing the collateral security clause of the Agreement.

## V.     Dividends

Defendants claim that RKM is entitled to dividends totaling approximately $300,000.00 that should function as an offset against any collateral they are required to post under the Agreement.

PIIC offers a dividend program for contract surety bonds for qualified contractors domiciled in Texas.  Under the program, PIIC and RKM agreed that RKM would receive a rebate of 20% of the premiums paid to PIIC upon successful completion of certain projects.  RKM claims that it is entitled to a rebate for completing certain projects that would offset part of the amount sought in collateral by PIIC.

The program provides, however, that "[n]o dividend shall be payable if the contractor . . . [h]as claims that result in the company establishing a loss" (Dkt. #27-4).  Because RKM has claims here that result in PIIC establishing a loss, which is the very nature of this motion for a preliminary injunction, RKM is not entitled to a dividend under the dividend program at this time.  Accordingly, no offset to the amount of collateral sought by PIIC is proper.

## VI.     Books and Records Obligations

Finally, PIIC's proposed order asks the Court to order Defendants to "specifically perform their books and records obligations under the Indemnity Agreement" (Dkt. #27-5).  Per the parties' March 5, 2020 Joint Advisory, however, it appears Defendants already performed those obligations (Dkt. #25).  Indeed, the Joint Advisory indicates that PIIC "wishes to proceed with its motion for injunctive relief related to the requested collateral" only, indicating that Defendants had satisfied PIIC's initial request to perform their books and records obligations.  *Id.* Accordingly, the Court sees no need at this time to enjoin Defendants with respect to their books and records obligations.  Those obligations appear to have been performed already; thus, any relief in that regard should therefore be denied.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Motion for Injunctive Relief and Brief in Support (Dkt. #12) is **GRANTED in part**.

Defendants RKM Utility Services, Inc., SHI Machinery, LLC, and Ryan Dowdy are **ORDERED** to specifically perform their obligation to deposit cash collateral with Plaintiff Philadelphia Indemnity Insurance Company in the amount of $496,574.97 within fourteen (14) days of the date of this Order. In the event Defendants RKM Utility Services, Inc., SHI Machinery, LLC, and Ryan Dowdy are unable to post cash collateral in that full amount within such fourteen (14) day period, Defendants RKM Utility Services, Inc., SHI Machinery, LLC, and Ryan Dowdy are **ORDERED**, within seven (7) days thereafter, to file with the Court a sworn declaration reflecting the same and meet and confer with Plaintiff Philadelphia Indemnity Insurance Company about a mutually acceptable form and substance of collateral sufficient to secure Plaintiff Philadelphia Indemnity Insurance Company fully against its projected losses.

It is further **ORDERED** that Defendants RKM Utility Services, Inc., SHI Machinery, LLC, and Ryan Dowdy are enjoined from transferring, encumbering, or otherwise dissipating any of their assets until such time as they have posted the full amount of the collateral demanded by Plaintiff Philadelphia Indemnity Insurance Company.

**SIGNED this 19th day of May, 2020.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE